CASE NO. 21-13814-J

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

QUANIAH STEVENSON

**Plaintiff/Appellant**

**vs.**

**DELTA AIR LINES, INC.**

**Defendant/Appellee.**

_____

_____

**BRIEF OF APPELLEE**

_____

On Appeal From The United States District Court,
Northern District of Georgia, Atlanta Division
The Honorable Amy M. Totenberg
Civil Action No. 1:16-cv-02571-AT

_____

Benjamin A. Stone
Georgia Bar No. 683850

MUNGER & STONE, LLP
999 Peachtree Street, NE
Suite 2850
Atlanta, GA 30309
(404) 815-1884

Counsel for Defendant/Appellant
Delta Air Lines, Inc.

<u>Quaniah Stevenson v. Delta Air Lines, Inc.</u>
Case No. 21-13814-J

# CERTIFICATE OF INTERESTED PERSONS
## <u>AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to FRAP 26.1 and Eleventh Circuit Rule 26.1-1, Appellee Delta

Air Lines, Inc. (Ticker Symbol: DAL, New York Stock Exchange) hereby

identifies the trial judge, all attorneys, persons, associations of persons, firms,

partnerships or corporations that have an interest in the outcome of this case:

Delta Air Lines, Inc. (DAL)

Munger & Stone, LLP

Thomas J. Munger, counsel for Delta Air Lines, Inc.

Quaniah Stevenson, Plaintiff and Appellant

Benjamin A. Stone, Esq., counsel for Delta Air Lines, Inc.

Charlena Thorpe, counsel for Quaniah Stevenson

The Honorable Amy M. Totenberg

The Honorable Linda T. Walker

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Delta Air Lines believes that oral argument is unnecessary and will not facilitate the resolution of this dispute.  The facts in this matter are entirely undisputed, and the both the Magistrate Judge and the District Court Judge correctly applied the controlling law in entering summary judgment in favor of Defendant Delta Air Lines, Inc.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT…………………………...    C-1

STATEMENT REGARDING ORAL ARGUMENT………………………..    i

TABLE OF CONTENTS……………………………………………………    ii

TABLE OF CITATIONS……………………………………………………    v

STATEMENT OF JURISDICTION………………………………………...    viii

STATEMENT OF THE ISSUES……………………………………………    1

STATEMENT OF THE CASE……………………………………………...    2

A.    Course Of The Proceedings And Disposition Of The Case
Below……………………………………………....................    2

B.    Statement Of The Facts……………………………………………    3

1.    Stevenson's Employment with Delta …………………….    3

2.    Delta's Travel Pass Policies ……………………………..    3

3.    Delta's Fly Right Campaign……………….…….…………    5

4.    The Pass Protection Group Review of Stevenson's Travel
Pass Records ………………………….………………    6

5.    The Interview Of Stevenson And The Termination
Decision ……………………………………………...    9

6.    Facts Related to Stevenson's 2014 Work Injury And Her
Full Release to Return to Work ………………..……..…    13

7.    The Lawsuit And Discovery Regarding Other Delta Employees Who Were Investigated For Violations of Delta's Travel Pass Policy………………….……...…    14

8.    Delta's Motion for Summary Judgment, The Magistrate Judge's Report and Recommendation, and The District Court's Order…………...................................    18

STANDARD OF REVIEW……………………………………………….    24

SUMMARY OF THE ARGUMENT……………………………………....    25

ARGUMENT AND CITATIONS OF AUTHORITY………………………..    27

A.    Stevenson Has Abandoned All Of Her Claims Except Her Discriminatory Termination Claims……......................................    27

B.    The District Court Did Not Err In Finding That Stevenson's Summary Judgment Response Violated The Local Rules……..    28

C.    The District Court Did Not Err In Granting Delta's Motion For Summary Judgment…………………………………………….    32

1.    The District Court Applied The Proper Summary Judgment Standard……………………………………….    32

2.    The District Court Correctly Concluded That Stevenson Did Not Demonstrate A *Prima Facie* Case Or Other Evidence of Discrimination..…………………………..    37

3.    The District Court Correctly Concluded That Stevenson Did Not Proffer Evidence That Would Establish Pretext……………………..…………….…….…………    40

D.    The District Court Did Not Refuse To Rule On Stevenson's Motion To Compel Or Abuse Its Discretion..………………    44

CONCLUSION…………………………………………………………..    44

iii

CERTIFICATION CONCERNING LINES AND WORD COUNT…………    ix

CERTIFICATE OF SERVICE………………………………………………    x

# TABLE OF CITATIONS

## CASES

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) .................................................32

Anderson v. Liberty Lobby, 477 U.S. 242 (1986)....................................................34

Blake v. Union Camp Int'l Paper, 622 F. App'x 853 (11th Cir. 2015). ...... 24, 25, 31

Calhoun v. EPS Corp., 36 F. Supp. 3d 1344 (N.D. Ga. 2014) ...............................39

Celotex Corp. v. Catrett, 477 U.S. 317 (1991) ......................................... 32, 33, 34

Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472 (11th Cir. 1991) ...36

Church of Scientology Flag Serv. v. City of Clearwater, 2 F.3d 1514 (11th Cir. 1993)...................................................................................................36

Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991) .................... 32, 33, 34

Earley v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990). .........................44

Elrod v. Sears, Roebuck & Co., 939 F.2d 1466 (11th Cir. 1991).............. 23, 24, 43

Hayes v. ATL Hawks, LLC, 844 F. App'x 171 (11th Cir. 2021) .................... 30, 31

Jones v. City of Columbus, 120 F.3d 248 (11th Cir. 1997)....................................35

Lee v. Safe-Dry Carpet & Upholstery, 2021 U.S. App. LEXIS 25957 (11th Cir. Aug. 27, 2021) ..........................................................................................40

Lewis v. City of Union City, Georgia, 918 F.3d 1213 (11th Cir 2019) .................38

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302 (11th Cir. 2009)..................... 24, 30

Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978)............44

Mullins v. Crowell, 228 F.3d 1305 (11th Cir. 2000)....................................... 33, 36

Reese v. Herbert, 527 F.3d 1253 (11th Cir. 2008)............................................. 29, 31

Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678 (11th Cir. 2014) ........... 27, 41

Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639 (3d Cir. 1998).......39

Smith v. Mercer, 572 F. App'x 676 (11th Cir. 2014)...............................................30

Soreno v. Serco Inc., 734 F. App'x 656 (11th Cir. 2018) .......................................30

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993)..............................................41

State Farm Mut. Auto. Ins. Co. v. Muse, 2022 U.S. App. LEXIS 3745 (11th Cir. Feb. 10, 2022)................................................................................................24

Thompson v. Metro. Multi-List, Inc., 934 F.2d 1566 (11th Cir. 1991)...................36

Velten v. Lippert, 985 F.2d 1515 (11th Cir. 1993)..................................................36

Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763 (11th Cir. 2005). ......................24

Walter Int'l Prods. Inc. v. Salinas, 650 F.3d 1402 (11th Cir. 2011) .......................27

**STATUTES**

28 U.S.C. § 1291 ...................................................................................................... vi

Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.*........... 2, 13, 32, 36, 38

Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*..........2, 21

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*..................2, 22

## **RULES**

Fed. R. Civ. P. 56 ................................................................................ 19, 34

Local Rule 56.1(N.D. Ga) ................................................................... passim

## **STATEMENT OF JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1291.

This is a direct appeal by the Plaintiff from a final judgment of the United States

District Court for the Northern District of Georgia, Atlanta Division.

## <u>STATEMENT OF THE ISSUES</u>

1.      Whether the District Court correctly entered summary judgment in favor of Delta Air Lines, Inc. ("Delta") on Plaintiff and Appellant Quaniah Stevenson's ("Stevenson") discrimination claims arising from her termination when Stevenson failed to properly respond to Delta's Summary Judgment Motion.

2.      Whether the District Court correctly entered summary judgment on Stevenson's discrimination claims where:  (a) the undisputed facts show that Delta terminated Stevenson after determining that she had violated Delta policies prohibiting the use of free Travel Passes for business, lost control of her passes, and failed to be forthcoming about her conduct; and (b) Stevenson demonstrated no evidence that suggested Delta acted on the basis of any protected characteristic (and, to the contrary, pointed to the undisputed evidence showing that individuals of all races, ages, and genders had been terminated by Delta for Travel Pass violations).

3.      Whether the District Court abused its discretion when it granted a Motion to Compel in favor of Stevenson, but denied her nationwide discovery in this case.

## STATEMENT OF THE CASE

### A.    Course Of The Proceedings And Disposition Of The Case Below

Stevenson was formerly employed by Delta as a Customer Service Agent at the Hartsfield Jackson Atlanta International Airport.  (Doc. 88-4, pp. 67)  In 2015, Delta terminated her employment after finding that she had violated Delta's policies relating to the use of free Delta Travel Passes, lost control of her Travel Passes, and then failed to be forthcoming with Delta about her conduct.  (Doc. 88-3, ¶¶ 13-16 and Exh. D)

Stevenson filed her Complaint on July 15, 2016, alleging violations of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq*.  ("ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. ("ADEA"). (Doc. 1, 3)  After a lengthy discovery period, during which Stevenson sought and received substantial discovery about other individuals in her work group who were investigated and terminated for violations of Delta's travel pass policies, Delta filed a Motion for Summary Judgment on all of Stevenson's claims on January 7, 2021. (Doc. 88)

On April 13, 2021, United States Magistrate Judge Linda T. Walker entered a Report & Recommendation ("R&R") first determining that Stevenson had not properly responded to Delta's Motion for Summary Judgment.  (Dkt. 102, pp. 1-8)

2

The R&R then determined that, in any event, the undisputed material facts established that Delta was entitled to summary judgment.  (Doc. 102, pp. 8-48)

Stevenson objected to the R&R, and thereafter United States District Court Judge Amy M. Totenberg conduced a *de novo* review of Delta's Motion for Summary Judgment and entered summary judgment for Delta.  (Doc. 106)

This appeal followed.  (Doc. 108)

**B.**    **Statement Of The Facts**

**1.**    **Stevenson's Employment with Delta**

In 2007, Stevenson was hired by Delta as a Ready Reserve (*i.e.*, part-time) Customer Service Agent at Delta.  (Doc. 88-4, p. 67)  She worked at Delta's ticket counter, at Delta's gates, and in the "arrivals area," at the Atlanta Hartsfield-Jackson International Airport.  (Doc. 88-4, p. 102)[1]

**2.**    **Delta's Travel Pass Policies**

As a valuable privilege of Delta employment, Delta provides its employees, certain of their family members and an employee-designated travel companion with free and reduced-rate travel (also known as "Travel Passes" or "Passes"). (Doc. 88-4, pp. 99-100; Doc. 88-3, ¶ 2)  Delta also provides its employees with an

---

[1] While Stevenson alleged in her Complaint that she was a highly performing employee, the undisputed facts show that she was repeatedly counseled and disciplined for her attendance and job performance during her employment.  (Doc. 88-4, pp. 108-16; Doc. 88-7; Doc. 88-8; Doc. 88-9)

3

additional pass travel benefit known as "Buddy Passes" – which allows an employee to provide reduced-rate transportation to friends or family members who are not their designated travel companion.  (Doc. 88-3, ¶ 3)

Delta has written policies regarding the use of Travel Passes ("Travel Pass Policies"), and periodically issues reminders to employees of the importance of complying with these policies.  (Doc. 88-4, p. 99; Doc. 88-6; Doc. 88-3, ¶ 4)

Among other things, Delta expressly prohibits the use of Travel Passes for anything other than leisure travel – and specifically forbids their use for business travel.  (Doc. 88-4, pp. 100-01; Doc. 88-6, p. 1; Doc. 88-11, p. 1)   Business travel is an important source of revenue for Delta, and for that reason Delta does not allow business travelers to utilize Delta Travel Passes.  (Doc. 88-3, ¶ 5)  Business travelers must buy a ticket on Delta.  (Id.)

This is a well-known rule at Delta and was admittedly well-known to Stevenson.  (Id.; Doc. 88-4, p. 101)  Among other things, on the very first page of Delta's Travel Pass Policies, it states in bold print:

> Any employee or pass rider who uses their pass travel privileges for personal business or other purposes not specifically permitted in this document…. or who violates any other provision of this document, will subject the responsible employee and the pass rider to disciplinary action, up to and including suspension of pass travel privileges and termination of employment.

(Doc. 88-6, p. 1)  The written policies reiterate that business travel is expressly prohibited. (Doc. 88-6, p. 2 (stating that travel for business activity is "prohibited")).

Delta also requires that its employees keep "control" of their Travel Passes and the Passes of their designated companions – including by ensuring that the employee is aware of the travel being undertaken by their designated companion and that their pass travel is not for business or any other improper purposes.  (Doc. 88-3, ¶ 6)  Stevenson testified that she was fully aware that Delta employees are responsible for overseeing and maintaining control of the use of their Travel Passes and ensuring that their non-employee travel companions comply with these Delta policies relating to Travel Passes.  (Doc. 88-4, p. 101; Doc. 88-3, ¶ 6)

### 3.    Delta's Fly Right Campaign

In approximately 2014, it came to Delta's attention that some of its employees were misusing their Travel Passes by, among other things, offering them for sale, using them for business purposes or allowing their designated travel companion to use them for business purposes.  (Doc. 88-3, ¶ 7; Doc. 88-10)  Accordingly, in April 2014, Delta issued a Memo and a set of Frequently Asked Questions to all of its employees that again reminded them of the rules and regulations surrounding the use of Travel Passes, including that such passes cannot be used for business purposes because such actions "are clear violations of the pass

policy" and that employees are "responsible for knowing how [their] pass travel privileges are used" by their designated travel companions. (Doc. 88-4, p. 101; Doc. 88-10)

Delta's April 2014 communication to all employees expressly stated "[d]on't share your passes with anyone who intends to use pass travel for business purposes." (Doc. 88-11, p. 1, Q. 3)  It also expressly reminded employees that pass travel abuse could result in termination of employment. (Doc. 88-11, p. 1, Q. 4 and p. 2, Q. 10)

Delta's April 2014 memo also informed employees that Delta was beginning an initiative known as the *Fly Right* campaign that was designed to stop Travel Pass abuse. (Id.; Doc. 88-3, ¶ 8)  Delta established a new group, known as the Pass Protection Group, "to work to proactively identify cases of possible abuse and investigate them thoroughly." (Id.)

### 4.    The Pass Protection Group Review of Stevenson's Travel Pass Records

Delta's Pass Protection Group utilized a set of objective criteria to determine which employees would have their Travel Pass usage reviewed – focusing on those employees and travel companions who had very high Travel Pass usage and those employees who shared Buddy Passes with individuals who had received Buddy Passes from a substantial number of Delta employees. (Doc. 62, pp. 159-60, 168)

6

In 2015, as part of the audit and based on objective criteria, Delta's Pass Protection Group was investigating the pass travel of all employees who had shared Buddy Passes with Vendell Bailey ("Bailey").  (Doc. 88-3, ¶ 10 and Exh. C; Doc. 88-4, p. 155)  Bailey triggered a review because he had received Buddy Passes from a number of different Delta employees including Stevenson.  (Id.)

Because Stevenson had shared passes with Bailey, Stevenson's travel pass records (like others who had provided passes to Bailey) were fully and carefully reviewed.  (Doc. 88-3, ¶ 10)  In the course of that review, the Pass Protection Group identified information that showed that Stevenson's designated travel companion, Jovan Dais ("Dais") was traveling frequently, and was traveling to numerous disparate locations, in a way that reflected possible business travel. (Doc. 88-3, ¶ 11 and Exh. A)[2]

Further review of public and on-line records by the Pass Protection Group (including social media and public postings by Dais) reflected that Dais was a producer and artist in the music business, and that, on at least one of his trips using

---

[2] Dais traveled frequently both during the week and during the weekends, at various times and to various locations, often for short duration (frequently 1 or 2 days).  His travel included Los Angeles, Phoenix, New York, Houston, St. Louis, Pittsburgh, Dallas, New Orleans, Washington, D.C., San Francisco, New York, Orlando, Salt Lake City, Burlington, Vt., Cincinnati, Las Vegas, and Detroit. (Doc. 88-3, ¶ 11 and Exh. A, p. 1; Doc. 88-13)

Stevenson's travel passes (a one-night trip to Los Angeles, California on June 6, 2015), Dais made the trip with a music artist with whom he worked, Caleb Boyett ("Boyett") for the purpose of Boyett performing in a concert. (Doc. 88-3, ¶ 12 and Exh. B; Doc. 88-4, pp. 186-87) Specifically, the records showed that, using Stevenson's travel passes, Dais traveled with Boyett to Los Angeles on Saturday June 6, 2015, where Boyett performed in the show that night, and then Dais and Boyett flew back the following day.[3] (Doc. 88-3, ¶ 12 and Exh. B; Doc. 88-13) The records also reflected that Dais and Boyett, had traveled together using Stevenson's travel pass benefits on at least one other occasion (a trip to Houston, Texas). (Id.) The records further reflected that Dais had paid Boyett's fees associated with Boyett traveling on Delta passes. (Id.)

---

[3] The records consisted of, among other things, a poster reflecting that Boyett (who was known in the business by his artist's name, Jino) was performing at the concert. (Doc. 88-4, p. 187; Doc. 88-12, p. 5) The records also consisted of a Twitter "tweet" by Mr. Boyett (that was re-tweeted by Dais) stating that Mr. Boyett was in Los Angeles on June 6, 2015 (the date that Dais traveled on Plaintiff's travel passes) with Dais and "headed to my show in Bakersfield [California] with [another music artist] @Tyga" (Doc. 88-12, p. 1) The records also consisted of pictures of Dais and Mr. Boyett at the concert. (Doc. 88-12, p. 10; Doc. 88-3, Exh. C, p. 3)

**5.**     **The Interview Of Stevenson And The Termination Decision**

Based on the information gathered by a review of documents, the Pass Protection Group determined that it was appropriate to interview Stevenson to investigate whether her travel benefits were being used by Mr. Dais for his music business. Stevenson was interviewed by a team that included member of Delta's Pass Protection Group (Mehret Tafesse), a member of Human Resources (Kiha Jones), and a Performance Leader (Francisco Cortes). (Doc. 88-3, ¶ 13 and Exh. C, p. 1; Doc. 88-4, pp. 149-50)

During her interview, Stevenson was asked a series of questions about the use of her travel passes, including about the use of her passes by Dais. (Doc. 88-4, p. 160 and Doc. 88-3, ¶¶ 13-14 and Exh. C) Stevenson provided information that, for reasons stated below, Delta concluded was not forthcoming and that Delta concluded confirmed the improper use of travel passes. (Doc. 88-3, ¶¶ 14 and 16 and Exhs. C and D)

Stevenson's interview was memorialized in a lengthy and detailed memo written by Delta's Pass Protection Group member Mehret Tafesse. (Doc. 88-3, ¶ 14 and Exh. C) As reflected in the Memo written by Tafesse, among other things:

- Stevenson confirmed that Dais was her boyfriend and travel companion, and that he was a music producer. (Doc. 88-3, Exh. C, p. 1)

9

- Even though she stated she made the travel arrangements for Dais on her travel passes, Stevenson stated she was unable to identify most of the locations where he had traveled in the recent past.  (Doc. 88-3, Exh. C, p. 1)

- When Stevenson was asked whether she had ever traveled with her companion and boyfriend Dais, she initially stated yes -- that they had traveled together multiple times and that they had recently traveled to a funeral together in Los Angeles.  However, when Stevenson was told Delta's records reflected that Stevenson and Dais had *never* traveled together, she retracted her prior statement and contradicted herself by denying that she had just said that she had traveled with Dais to a funeral.  However, she continued to maintain (in contravention of Delta's travel records) that she and Dais had traveled together in the past (although she did not identify where).  (Doc. 88-3, Exh. C, p. 2)[4]

---

[4] It is undisputed that -- despite being travel companions -- Stevenson and Dais *never* traveled together.  (Doc. 88-4, p. 169, 171)  During her deposition, Stevenson at first denied stating to the interviewers that she and Dais had traveled together.  (Doc. 88-4, pp. 169-71)  But she then admitted that she could not recall the precise conversation, and admitted that she did raise the topic of traveling to a funeral.  (Doc. 88-4, p. 171)  As there was no other logical explanation (and Stevenson provided none) for why she would have raised the topic of a funeral at this meeting, Delta found this statement (as well as Plaintiff's claims that Dais had not used the benefits for business purposes) to be false.  (Doc. 62, pp. 101-02)

- When Stevenson was told that public records reflected that Dais and Boyett had traveled together to Los Angeles for the concert performance, Stevenson initially stated she did not know anything about that. She then acknowledged the travel and acknowledged that Boyett was performing in the concert. (Doc. 88-3, Exh. C, p. 2)[5]

Tafesse's memo summarizing the interview of Stevenson, along with the other information gathered in connection with the investigation, was reviewed by Delta Airport Customer Service Performance Leader Mark Harris -- who issued a written recommendation to Delta Station Manager Kelly Patton that Ms. Stevenson's employment be terminated as she was "not forthcoming regarding her current companion and his travel;" as "she could not provide his place of travel;

---

[5] During her deposition, Stevenson was asked about her statements at the interview and what she told the interviewers about Dais' travel to California using her passes. Stevenson offered at least four different and internally-inconsistent versions of what she told Delta in that interview. She testified, at various points, that she told Delta (1) that she did not know what Dais was doing in California because she did not ask him; (2) that she did ask him, and that he was there for a concert; (3) that she did ask him, and he was not there for a concert but to visit his daughter; (4) that she did know, and that he was there for the concert; and (5) numerous other accounts about what she said, and did not say, at the interview. (Doc. 88-4, pp. 173-85)

and as "[r]esearch by [Equal Opportunity] indicates her companion used non-revenue benefits for business purposes." (Doc. 88-3, ¶ 15 and Exh. D)[6]

Station Manager Patton agreed with Performance Leader Harris' recommendation. (Doc. 88-3, ¶ 16) Thereafter, Delta Senior Manager - Human Resources, Barbara Franz, also reviewed the investigation materials and also concurred with the termination decision. (Id.) Delta Human Resources employee Nicole Elkins (who worked for Delta Human Resources Director Lisa Blackmon) reviewed the file to ensure that Delta's process was followed and the paperwork was complete, and Stevenson was terminated.[7] (Doc. 57-1, pp. 36-37; Doc. 88-3, ¶ 16)

---

[6] Stevenson contends in her Appellant Brief that "Delta's alleged reason for firing Ms. Stevenson does not state that she was fired for being untruthful." (Appellant Brief, p. 25) As noted above, the Recommendation for Termination expressly states that Stevenson was "not forthcoming regarding her current companion and his travel." (Doc. 88-3, ¶¶ 15-16 and Exh. D)

[7] For terminations of Customer Service Agents, Delta has a final level of review for the purpose of ensuring that the paperwork is in order and that Delta's processes have been followed. (Doc. 57-1, pp. 17-20) At the relevant time, that function was typically performed by Delta Human Resources Director Lisa Blackmon, but in Stevenson's case, the role was completed by Delta Employee Nicole Elkins who worked in Ms. Blackmon's office and who would have authority to perform that function. (Doc. 57-1, pp. 36-37) Ms. Elkins reviewed the file "to ensure that [Delta's] process was completed" and she signed for Ms. Blackmon to indicate that she had performed this role. (Id.)

After her employment was terminated, Stevenson internally appealed her termination and claimed for the first time that Dais had traveled to California on the weekend of June 6, 2015 for a "graduation ceremony" for one of his children. (Doc. 88-4, pp. 231-32, 233; Doc. 88-15)  While this explanation was illogical given the 24-hours that Mr. Dais was in California (having flown in Saturday June 6, attended the concert that evening, and having flown out on Sunday June 7), Delta nonetheless gave Stevenson the opportunity to produce any documents supporting this "graduation" explanation.  (Id.)  Stevenson could produce no document supporting any such graduation to Delta.  (Doc. 88-4, p. 235)

**6.    Facts Related to Stevenson's 2014 Work Injury And Her Full Release to Return to Work**

Because Stevenson asserted that she suffered a work-related injury that constituted a disability, and contends that Delta thereafter violated the ADA in its treatment of her and failed to reasonably accommodate her, Delta next addresses the undisputed facts regarding ADA claim.

In 2014, Stevenson injured her shoulder, neck and back when a luggage bag fell on her.  (Doc. 88-4, pp. 25, 207, 213-14)  She was released to full duty work without any restrictions in October 2014 and was never again restricted from performing any of her work assignments at Delta.  (Doc. 88-4, p. 222-24)  Other than seeking time-off for her 2014 injury (a request that was granted), Stevenson

13

never asked for any accommodation relating to her work-related injury.  (Doc. 88-4, pp. 89-94, 222; Doc. 88-5)[8]

### 7. The Lawsuit And Discovery Regarding Other Delta Employees Who Were Investigated For Violations of Delta's Travel Pass Policy.

In discovery in this lawsuit, Stevenson sought nationwide information and documents regarding other Delta employees who had been investigated for violations of Delta's travel pass policy - and she filed a Motion to Compel seeking such discovery on a nationwide basis.  (Doc. 50)  After a hearing before Magistrate Judge Walker and discussions between counsel regarding the appropriate scope of this discovery, the parties entered into a Consent Order on April 22, 2019 which provided that Delta would identify all of the Delta employees in Stevenson's work area (i.e., all of Delta's Atlanta-Based Airport Customer Service Agents) who were investigated for violations of Delta's travel pass policy during a three year period (2013-15), and identify a number of other categories of individuals.  (Doc. 52, pp.

---

[8] Stevenson did, at one time (at the suggestion of her Performance Leader Carol Kerr) seek an adjustment to her shift to address some personal problems that she was having related to her car and an aunt who had recently passed away -- and her request was granted.  (Id.)  However, she made no other accommodation request -- and no request relating to her 2014 work-related injury after returning to work -- as she had no limitations related to that injury.  (Doc. 88-4, pp. 223-24)

2-3)[9]  The parties further agreed that they would meet and confer regarding the production of investigative memos and disciplinary documents relating to these individuals -- and if no agreement were reached through the "meet and confer" process, the matter would be brought to the Court's attention.  (Id.)

In addition, because Stevenson was seeking to expand discovery in this case to Delta employees nationwide -- based on an (incorrect) belief that a Delta Director of Human Resources Lisa Blackmon was a decision-maker in her termination and the terminations of other Delta employees beyond Stevenson's Atlanta work unit -- the parties agreed that Stevenson would be permitted to take the deposition of Blackmon to determine if she was a decision-maker in Stevenson's termination.  (Doc. 52, p. 4, ¶ 5)

Blackmon was deposed on July 12, 2019 and her testimony established that: (1) at most her role in any termination at Delta and is not as a decision-maker, but instead is limited to ensuring that Delta's processes have been followed (Doc. 57-

_____

[9] The Human Resources Manager who reviewed and approved Stevenson's termination (Barbara Franz) was the Senior Manager-Human Resources, ACS in Atlanta.  (Doc. 89, pp. 10-12)  She had responsibility for Airport Customer Service Agents in Atlanta and had four Human Resources Managers reporting to her.  (Id.) As noted above, Plaintiff was granted discovery for the entire Atlanta Airport Customer Service workforce who were under Franz.

1, pp. 17-20, 30);[10] and (2) she played *absolutely no role whatsoever* (even checking on the process) in connection with Stevenson's termination. (Doc. 57-1, p. 36-37)

Stevenson thereafter filed a Second Motion to Compel, renewing her request for nationwide discovery and seeking additional documents. (Doc. 56) After reviewing Blackmon's testimony, and considering both sides' arguments (contained in Docs. 56 and 57) the Magistrate Judge denied Stevenson's request to expand discovery nationwide. (Doc. Entry dated October 10, 2019 (stating "Having read the deposition of Lisa Blackmon in its entirety, Plaintiff's Motion to Compel, and Defendant's response in opposition, Plaintiff's Motion to Compel is hereby DENIED")[11]

---

[10] Specifically, Blackmon testified that, because of her Director level at Delta, and her significant strategic responsibilities, her role in terminations generally is limited to ensuring that the basic Delta process is followed (i.e., that the required documents are present and there is a reason for the termination). (Doc. 57-1, pp. 9-10, 15-19) She does not go behind the documents in the termination file, nor does she review files or situations where someone is investigated, but either cleared of misconduct or receives discipline. (Doc. 57-1, pp. 15-16) When she reviews termination files, she is not even aware of any protected characteristic (such as race, age, or sex) of the employee -- and thus there is no way she could have a discriminatory intent. (Doc. 57-1, pp. 29-30)

[11] Stevenson falsely alleges to this Court that it was established that: (1) Blackmon was the ultimate decision-maker in all disciplinary actions involving firing (including hers) and; (2) that the Magistrate Judge and the District Court Judge refused to rule on Stevenson's Motion to Compel. (Appellant Brief, p . 5) These allegations are indisputably false. First, as noted above the Magistrate Judge and

Stevenson then filed Objections to the Magistrate Judge's Discovery Order
(Doc. 64) and by Order dated January 8, 2020, the District Court sustained
Stevenson's objections in part and granted her additional discovery. (Doc. 67)
While the District Court did not order nationwide discovery, it granted Stevenson
substantial, additional discovery that she sought (specifically, the production of
documents and information concerning dozens of additional employees outside of
her Atlanta-based workgroup who were investigated by Delta after being identified
as having been investigated for travel pass violations). (Doc. 67, pp. 3-4) In
addition, the District Court granted Stevenson the opportunity to take even more

_____

the District Court both ruled on her Motion to Compel. Second, for the notion that
Blackmon was the ultimate decision-maker in her termination (and the termination
of others), Stevenson cites only Doc. 64-2, which are excerpts of pages 17-20 and
29-36 of Blackmon's deposition. As set forth above, page 36 (as well as page 37)
of Blackmon's deposition establishes that Blackmon did not sign off on
Stevenson's termination, and pages 17-20 confirm that Blackmon plays the "very
limited" process role in other terminations. The remaining pages confirm that: (a)
Blackmon reviews the file "to ensure the process has been completed;" and (b)
Blackmon does not even have access to demographic information about the person
whose file she is reviewing (and thus could not possibly discriminate based on any
unlawful characteristic). (Id., pp. 29-30)

   As Ms. Blackmon noted in her deposition, it is also theoretically possible that in
reviewing the file, she might have questions or disagree with a termination
decision, and under those circumstances, she "may ask questions." (Id., p. 32)
However, Ms. Blackmon testified that while she "[h]as the authority to ask the
question and go back and have conversations around any sort of concern…, [t]he
leaders in the business make the decisions around employment [and] HR consults
and "the full ownership of the decision lies with the business leaders." (Id., pp. 32-
33)

17

depositions of Delta employees regarding these investigations. (Doc. 67, pp. 3-4)

Delta produced documents, and the depositions were completed on October 16, 2020. (Doc. 89) Stevenson filed no further Motion to Compel following the grant of her Motion to Compel on January 8, 2020. (<u>See</u> <u>generally</u>, Doc. Entries after Doc. 67)

### 8. <u>Delta's Motion for Summary Judgment, The Magistrate Judge's Report and Recommendation, and The District Court's Order</u>

On January 7, 2021, Delta filed a Motion for Summary Judgment on the entirety of Stevenson's Complaint, contending that she could neither make out a *prima facie* case of discrimination under any statute, nor rebut Delta's legitimate, non-discriminatory reasons for terminating her, nor otherwise demonstrate discrimination. (Doc. 88) On January 28, 2021, Stevenson filed a "response" to Delta's Motion for Summary Judgment, but did not file a separate response to Delta's Statement of Undisputed Facts nor her own Statement of Additional Facts as required by the Court's Local Rule 56.1. (Doc. 96) On February 3, 2021, Stevenson filed a "Supplemental Response" to Delta's Summary Judgment Motion solely "to correct typos and to provide minor additional citations to the record." (Doc. 98) The "Supplemental Response" was materially identical to the original response and still did not include the other required documents. (Compare Doc. 96 and Doc. 98)

18

Delta filed a Reply Brief on February 10, 2021 (Doc. 99) and on April 13, 2021, the Magistrate Judge issued a Report and Recommendation that Delta's Motion for Summary Judgment be granted. (Doc. 102)

The Magistrate Judge first found that Stevenson's response to Delta's Summary Judgment Motion did not comply with Fed. R. Civ. P. 56 or Local Rule 56.1 (N.D. Ga). (Doc. 102, pp. 1-3) The Magistrate Judge noted that, while Stevenson filed a Brief, she did not (as required) file a response to Delta's Statement of Undisputed Facts. (Doc. 102, pp. 2-3) The Magistrate Judge further noted that, even when Stevenson attempted to respond to some of Delta's Statement of Facts in her Brief, she did not comply with the rules -- including the rules that she provide concise, non-argumentative responses supported by a record citation. (Doc. 102, pp. 5-7)[12]

The Magistrate Judge further found that, while she interspersed a slew of new, purported facts into her Summary Judgment Brief (often without any record

---

[12] Specifically, while Stevenson purported to respond to some of Delta's facts in her Summary Judgment Brief, she did not respond to all of them and she did not do so with proper record citations and concise, non-argumentative responses as required in a Response to a Statement of Undisputed Facts. Among other things, Stevenson: (a) denied many Delta facts with no record cite whatsoever; (b) denied other Delta facts by providing a record cite that did not support the denial; (c) admitted part of a Delta fact and while ignoring or recasting the remainder; (d) made sham denials of a fact after admitting the fact on deposition; and (e) responded to a Delta Statement of Fact with an entirely argumentative section. (See Doc. 99, pp. 3-4)

citation), Stevenson also filed no Statement of Additional Facts as required by the

rules.  (Doc. 102, pp. 2-3)  As the Magistrate Judge stated:

> If this were some mere technical flaw, Plaintiff's counsel might be forgiven.  But the Court cannot discern what "additional facts" Plaintiff's counsel would have included in a "separate statement." Plaintiff's brief does not contain a fact section….
>
> ***
>
> Plaintiff's counsel appears to leave it to the Court to sort through the record to determine which facts might support her arguments. The entire purpose of Local Rule 56.1 is to get parties to "organize the evidence rather than leaving the burden upon the district judge." … Again, it is not the Court's job to "dig through volumes of documents and transcripts" to try to find facts to support Plaintiff's position.

(Doc. 102, p. 3) (emphasis supplied, some citations omitted).[13]

Notwithstanding Stevenson's failure to file a proper response to Delta's

Motion, the Magistrate Judge nonetheless undertook a substantial review of the

entire record, and found that there was no material factual dispute that would

prevent summary judgment.

---

[13] Stevenson alleges to this Court that she did not file a separate Statement of Facts because she introduced no "additional facts" into her summary judgment response. (Appellant Brief, p. 28)  One need only look at her summary judgment response to recognize that this is false.  She also alleges, without any support, that new facts relating to comparators need not be included in a Statement of Facts because it is a "mixed question" of law in fact.  However, Rule 56.1 requires any facts (whether or not related to an issue of law) to be included in a separate statement, so that the Court can fairly and efficiently evaluate the alleged facts relied upon by the nonmovant.

The Magistrate Judge first considered Stevenson's claims arising from events other than her termination (including her argument in her summary judgment response that she was the victim of an unlawful "hostile work environment" during her employment at Delta).  In pertinent part, the Magistrate Judge found that Stevenson had asserted no claim of hostile work environment in her Complaint and that, even if she had, she identified nothing other than isolated, non-severe events to purportedly support such a claim.  (Doc. 102, pp. 16-17)  The Magistrate Judge further found that Stevenson's failure-to-accommodate claim failed because she could identify no ADA disability and could identify no request for reasonable accommodation.  (Doc. 102, pp. 18-21)

The Magistrate Judge then turned to Stevenson's claims of age and disability discrimination arising from her termination and found:

- Stevenson could make no *prima facie* showing under the ADEA by showing that she was replaced by a substantially younger person or otherwise (and, indeed, she barely discussed age in her Brief) (Doc. 102, pp. 22-24)

- Stevenson could make out no *prima facie* ADA case because (as noted above) she could not show that she was disabled under the ADA and she did not cite to any record evidence (but, instead, only to allegations in her Complaint), that she was subject to any allegedly unlawful discrimination based on her unidentified disability. (Doc. 102, pp. 24-26)

21

- Stevenson could not make out a retaliation claim because she did not engage in any statutorily protected activity.  (Doc. 102, pp. 45-46)

The Magistrate Judge then turned to Stevenson's claims of race or sex discrimination under Title VII.  The Court found that Stevenson also could not make out a *prima facie* claim on these claims.  While Stevenson attempted to rely on "comparable evidence" to support her claims, the Magistrate Judge found, among other things:

- She did not show that her alleged comparables were outside her protected class.  (Doc. 102, p. 26)

- She did not show that her alleged comparables were similarly situated for a host of reasons, including that she did not show: (1) they were supervised by the same decision-makers; (2) they had similar disciplinary histories;  and (3) "[m]ost importantly" that any "of the alleged comparators engaged in the same misconduct as her."  As the Court noted, many of them were found by Delta not to have engaged in misconduct, and others engaged in completely different alleged conduct .  (Doc. 102, pp. 26 -36)

- In any event, Stevenson's comparables were "cherry picked" among hundreds of other employees -- and [Stevenson] "does not address the dozen young, white, male employees who were terminated and the numerous

individuals in Plaintiff's protected class who were not terminated." (Doc. 102, p. 27, n.15)

Finally, the Magistrate Judge noted that Stevenson had no evidence that Delta's explanation for her termination was pretext for any form of unlawful discrimination. (Doc. 102, pp. 37-45) For instance, while Stevenson claimed that Delta's reasons for terminating her had changed, the evidence showed that they were consistent throughout. (Id.) As the Magistrate Judge noted: -- "the real crux of [Stevenson's] argument is that she 'did not violate any travel pass policy'" and that is not a sufficient argument to defeat summary judgment because "the Court is not a "super personnel department that second-guesses employers' business judgments." (Doc. 102, p. 42) (citing, inter alia, Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)). For these reasons, the Magistrate Judge recommended granting Delta's Motion for Summary Judgment. (Doc. 102, p. 48)

Because Stevenson filed objections to the Magistrate Judge's R&R (Doc. 104), the District Court then undertook a *de novo* review of the Magistrate Judge's Recommendation and adopted it in toto. (Doc. 106) In pertinent part, the District Court stated:

> The Court agrees with the Magistrate Judge's initial finding that
> Plaintiff failed to comply with the Local Rules in responding to
> Delta's summary judgment motion and statement of material facts.
> Even after noting this procedural failure, the Magistrate Judge
> substantively assessed Plaintiff's claims in light of the governing

23

authority and properly determined that Plaintiff failed to cite to
evidence sufficient to create an issue of material fact that makes a
difference in the legal analysis of her claims. The Court has similarly
reviewed the record, including Plaintiff's response brief and
objections, and agrees with the R&R's conclusions that Plaintiff has
not established a *prima facie* case as to any of her claims, much less
rebutted the legitimate nondiscriminatory reasons provided by Delta
for either the broad investigation of employees' travel benefits or for
Plaintiff's termination. It is not the Court's role to second-guess
Delta's policy or the rationales behind it. *Elrod v. Sears, Roebuck &
Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (noting that federal courts
"do not sit as a super personnel department that reexamines an entity's
business decisions.")

(Doc. 106, pp. 2-3)

## STANDARD OF REVIEW

The standard of review for an order of summary judgment is *de novo*.

Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005).

The standard of review of a district court's application of its own local rules,

and for review of a district court's discovery order, is "abuse of discretion." Mann

v. Taser Int'l, Inc., 588 F.3d 1291, 1302 (11th Cir. 2009); State Farm Mut. Auto.

Ins. Co. v. Muse, 2022 U.S. App. LEXIS 3745, at *8 (11th Cir. Feb. 10, 2022);

Blake v. Union Camp Int'l Paper, 622 F. App'x 853, 856 (11th Cir. 2015).

Under the "abuse of discretion" standard, the appellate court will not disturb

a district court ruling so long as the court has not made a clear error of judgment or

applied the wrong legal standard. Further, the appellate court will not overturn

discovery rulings unless it is shown that the district court's ruling resulted in

substantial harm to the appellant's case.  <u>Blake</u>, 622 F. App'x at 855 (11th Cir. 2015)

## SUMMARY OF THE ARGUMENT

The District Court's Order granting summary judgment to Delta is properly affirmed for a number of independent reasons.

First, Stevenson did not properly respond to Delta's Summary Judgment Motion.  She did not properly respond to Delta's Statement of Undisputed Facts, and she attempted to assert many purported facts into her Summary Judgment Brief without filing her own Statement of Facts with clear citations to the record. As the Eleventh Circuit has explained, the proper course in these circumstances is for a district court to "disregard or ignore" Stevenson's alleged evidence opposing Delta's summary judgment motion.  Doing so effectively rendered Delta's summary judgment motion unopposed, and properly granted.

Second, despite Stevenson's failure to properly respond, the Magistrate and District Court Judge gave Stevenson a substantial benefit of the doubt to which she was not entitled.  They painstakingly reviewed Stevenson's filing and the evidentiary record, and correctly found that Stevenson neither established a *prima facie* case of discrimination, nor proffered any evidence that Delta's explanation for terminating her was pretext for discrimination.

While Stevenson argues that the District Court applied the wrong summary judgment standard and ignored evidence in the record, it is Stevenson that is committing both of these errors. The lower court correctly cited and rigorously applied the summary judgment standard -- and reviewed all of Stevenson's "evidence" of alleged discrimination in depth including her alleged "comparable" evidence. The district court correctly found that her allegedly better-treated "comparables" did not support her claim of discrimination for multiple, independent reasons including: (a) they were in her same protected categories; (b) the had different supervisors who made the employment decisions at issue; (c) and they engaged in different conduct and thus were treated differently by Delta. The district court correctly applied controlling law in this analysis and in its separate analysis of Stevenson's claims of pretext.

Finally, Stevenson's argument that the District Court failed to consider a discovery motion brought by her simply misstates the record. The District Court not only considered, but granted in part that Motion. And Stevenson does not show (or even try to show) any abuse of discretion by the District Court in its discovery ruling.

## ARGUMENT AND CITATIONS OF AUTHORITY

### A.    Stevenson Has Abandoned All Of Her Claims Except Her Discriminatory Termination Claims

Delta first notes that Stevenson's Appellant Brief focuses solely on her claim of discriminatory termination.  She does not reference (much less adequately address) many of the claims which were dismissed on summary judgment, including her purported hostile work environment, failure-to-accommodate, and retaliation claims.  (Doc. 102, pp. 16-20)

An appellant abandons a claim when she either does not mention it in her appeal brief, or when she "makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."  Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) (citing, *inter alia*, Walter Int'l Prods. Inc. v. Salinas, 650 F.3d 1402, 1413 n.7 (11th Cir. 2011)).  Even if they were not abandoned, however, there would be no basis to reverse the District Court's decision on these claims.  As noted above, they were decided exactly correctly based on Stevenson's admissions on deposition and the other, undisputed evidence in the record.[14]

---

[14] Specifically, Stevenson did not allege a hostile work environment claim in her Complaint, and even if she did, her alleged "harassment" (consisting of two minor counselings from her supervisor) were not remotely close to an unlawful hostile work environment.  (Doc. 102, pp. 165-17)  Similarly, Stevenson was not disabled

**B.**    **The District Court Did Not Err In Finding That Stevenson's Summary Judgment Response Violated The Local Rules.[15]**

The Magistrate Judge and the District Court correctly held that Stevenson's Response to Delta's Motion for Summary Judgement violated the Local Rules -- both because she failed to file her own Statement of Facts on which she was relying to avoid summary judgment and because she failed (in numerous ways) to properly respond to Delta's Statement of Facts with concise citations to the record. This holding was correct.

Local Rule 56.1 expressly requires that a plaintiff who is opposing a Motion for Summary Judgment to file, along with the responsive brief, two additional "documents." First, the plaintiff must file a document responding to the movant's Statement of Undisputed Facts. That document must contain "individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." (LR 56.1(B)) If the plaintiff fails

---

under the ADA, and never sought accommodation from Delta or engaged in any other protected activity under the law. (Doc. 102, pp. 18-20, 45-48)

[15] Stevenson makes much ado in her Appellant Brief about the Magistrate Judge citing to her Summary Judgment Response at Doc. 96 rather than Doc. 98. What she fails to tell the Court is that those responses are substantively identical. (Compare Doc. 96 and Doc. 98) Both the Magistrate Judge and the District Court Judge reviewed all of Stevenson's substantive arguments -- and correctly rejected them.

to "directly refute the movant's fact with concise responses supported by specific citations to evidence," the Court properly "deem[s] each of the movant's facts as admitted."

In addition, if a plaintiff is relying on additional facts (such as facts about alleged "comparable employees"), she must also file "[a] statement of additional facts which the respondent contends are material and present a genuine issue for trial."  See LR 56.1(B)(2)(b).  As stated in the R&R, "[t]he Local Rules are abundantly clear that the Court will not consider any fact set out only in the brief and not in a separate statement."  (Doc. 102, p. 2) (internal marks omitted).[16]

This Court has repeatedly recognized that District Courts act well within their discretion when they demand compliance with Local Rule 56.1 and:  (a) treat as unopposed those facts that are not concisely rebutted, with record citations, in a separate Response to a Statement of Undisputed Facts; and (b) disregard facts that are include only in a Brief and not in a separate Statement of Material Facts.  See Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008)  ("The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent -- but not cited in its

---

[16] To ensure parties are aware of these requirements, both the Northern District of Georgia's Standing Order (Doc. 104-1) and the Magistrate Judge's Scheduling Order in this case (Doc. 5) echo these requirements.

response to the movant's statement of undisputed facts… . That is, because the non-moving party has failed to comply with Local Rule 56.1 -- the only permissible way for it to establish a genuine issue of material fact at that stage -- the court has before it the functional analog of an unopposed motion for summary judgment."). See also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (same and stating Plaintiff's failure "to comply with local rule 56.1 is not a mere technicality."); Smith v. Mercer, 572 F. App'x 676, 678 (11th Cir. 2014) (facts deemed admitted under Local Rule 56.1); Soreno v. Serco Inc., 734 F. App'x 656, 658 (11th Cir. 2018) (same).

This Court's decision in the recent Hayes v. ATL Hawks, LLC, 844 F. App'x 171, 184-85 (11th Cir. 2021) case is instructive.  There, the plaintiff did *much more* to comply with Rule 56.1 than Stevenson did here.  He actually filed both a separate Response to the defendant's Statement of Undisputed Facts and his own separate Statement of Facts.  However, both of these filings by the plaintiff were non-compliant with Local Rule 56.1, as they were rambling, frequently lacked citations and contained many incorporations by reference -- and thus the District Court disregarded them.  This Court affirmed that decision, explaining:

> [Plaintiff's] response was not concise and that many of his responses
> contained "rambling arguments based on his interpretation of the
> evidence rather than concise, nonargumentative responses and specific
> citations to evidence" in violation of Local Rule 56.1. The district
> court explained how [Plaintiff's] response argued legal conclusions

instead of responding succinctly to facts and noted that his Statement
of Additional Material Facts and Second Amended Statement of
Additional Material Facts were similarly problematic. As the district
court correctly pointed out, even if it wished to do so, "it would be
nearly impossible to divine [Plaintiff's] intentions from his cross-
references," and that the point of Local Rule 56.1 was to prevent
situations like this one where judges had to "hunt and peck for the
relevant undisputed facts." Because we find that the district court
correctly applied Local Rule 56.1, it did not make a clear error of
judgment or abuse its discretion.

Id. at 184-85.

Consistent with Reese, Hayes and the other authority cited above, the

Magistrate Judge and the District Court both correctly recognized that Stevenson

failed to comply with Local Rule 56.1.  This holding was correct under controlling

law and certainly was not an abuse of discretion by the District Court.  Further, as

set forth below, because this holding did not result in substantial harm to

Stevenson's case (as Stevenson's improperly-asserted "facts" were still considered

and analyzed by the lower court), this ruling provides no basis to reverse the grant

of summary judgment.  Blake, 622 F. App'x at 855 (11th Cir. 2015).  Instead, it

provides an independent basis to affirm it.

31

**C.    The District Court Did Not Err In Granting Delta's Motion For Summary Judgment.**

**1.    The District Court Applied The Proper Summary Judgment Standard.**

Despite Stevenson's failure to properly respond to Delta's Summary Judgment Motion, the Magistrate Judge and the District Court considered, at length, her alleged facts and the merits of her arguments.  As her next alleged error, Stevenson alleges that, when doing so, the Magistrate Judge and then the District Court "applied the wrong standard" to Delta's Motion for Summary Judgment because it "misapplied the movant and non-movant burdens." (Appellant Brief, p. 10)  Again, Stevenson is wrong -- the lower Court cited and applied the summary judgment standards in precisely the correct way.

The parties' burdens on a Motion for Summary Judgment in employment discrimination (and other) claims is straightforward.  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991) (citing, *inter alia*, Celotex Corp. v. Catrett, 477 U.S. 317 (1991) and Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)).

32

As explained in <u>Celotex</u>, a defendant employer moving for summary judgment can meet its initial burden in one of two ways:

> First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

477 U.S. at 331 (citations omitted).

When the moving party contends that there is "insufficient evidence" in the record to establish a claim, the "mechanics" to make this showing are well-established:

> … a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. … This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

<u>Id</u>. at 331-32 (citations omitted).

Once the defendant employer meets its initial burden on summary judgment, the burden shifts to the nonmoving party to demonstrate that summary judgment would be inappropriate because there exists a material issue of fact. <u>Clark</u>, 929 F.2d at 608; <u>Mullins v. Crowell</u>, 228 F.3d 1305, 1313 (11th Cir. 2000). The

33

nonmoving party must then go beyond the pleadings and by affidavits, depositions, or other evidence and designate facts that show there is a genuine issue for trial. Celotex, 477 U.S. at 32. See also Clark, 929 F.2d at 608.

The District Court, both in the Magistrate Judge's R&R and the District Court's decision set forth exactly the correct summary judgment standard. (Doc. 102, pp. 14-15; Doc. 106, p. 2) The District Court emphasized that, in reviewing the R&R, its was doing so *de novo* and applying the standards under Rule 56 and Anderson v. Liberty Lobby, 477 U.S. 242 (1986). (Doc. 106, p. 2) The District Court stated that it was resolving "all reasonable doubts about the facts in favor of the non-movant" and otherwise applying the correct standard (Id. p. 2., n.1)

The Magistrate Judge and the District Court also correctly recognized that, through its own evidence and its citations to Stevenson's and other depositions in this case, Delta more than met its initial burden on summary judgment. Delta did not just "simply state" that Stevenson could not meet her burden at trial on these claims. Instead, it proffered affirmative evidence (affidavits and contemporaneous documents showing that Plaintiff was terminated for lawful, non-discriminatory reasons) and addressed at length the alleged evidentiary basis for Plaintiff's discrimination claim as set forth in her Complaint and in her deposition. Indeed, Delta went claim-by-claim through Stevenson's complaint – explaining why each of her claims failed under both a *prima facie* and pretext analysis based on both

34

Delta's affirmative evidence and Stevenson's deposition admissions (including her testimony that she knew of no one who engaged in conduct like hers without being terminated).  (Doc. 88-2, pp. 3-22)  To put it bluntly, it is difficult to imagine a more well-supported basis for summary judgment in a case.

Stevenson suggests that Delta was required to do more with respect to her termination claim -- and that it was required to predict (despite her deposition testimony to the contrary) not only that she was going to rely on "comparable" evidence, but exactly which of the hundreds of specific employees on which she had received discovery (many of whom were in the same protected classifications as her, and none of whom had engaged in her level of misconduct) she would argue support her claim.  Stevenson essentially contends that a defendant moving for summary judgment must be clairvoyant, predicting and rebutting in its opening brief every argument that a plaintiff might make.  Putting aside the lack of logic in this argument, none of the cases cited by Plaintiff support such a notion, and they are all materially different from this one.

In Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997), for instance, the employer in an FLSA overtime claim brought by EMS employees sought summary judgment based on a single, conclusory sentence -- relating to how these EMS employees spent the "majority of their time."  This Court reversed that decision on two grounds -- first because the employees had not been provided

*any* discovery in the case, and second because the single, conclusory sentence offered by the employer did not meet the employer's initial burden to show that it was entitled to summary judgment because the relevant facts in the case related to other issues, such as whether the employees were "dispatched to certain emergencies and whether they spend at least 80% of their time on firefighting and law enforcement activities." Id. at 254. The employer's single-sentence of evidence did not address the relevant issues in the case.

In Thompson v. Metro. Multi-List, Inc., 934 F.2d 1566, 1583 n.16 (11th Cir. 1991), the District Court granted summary judgment to a defendant based on a lack of evidence from the plaintiff -- when the defendant had not come forward with anything to suggest there was a lack of evidence on the claim. While this Court noted that this was not an appropriate application of the summary judgment standard, this Court nonetheless *affirmed* the summary judgment grant.[17]

---

[17] The remaining cases cited by Plaintiff are also all irrelevant, or demonstrate why the grant of summary judgment to Delta was exactly correct. For instance, in Mullins v. Corwell, 228 F.3d 1305 (11th Cir. 2000), this Court *affirmed* a grant of summary judgment to the employer in an ADA case, by relying (just as Delta did) on their deposition testimony that showed they were not disabled under the ADA. In Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1478 (11th Cir. 1991), this Court reversed a grant of summary judgment *to a plaintiff* (who bore the burden of proof at trial) when he came forward with only "tenuous" evidence that suggested he could prevail against one of the individual defendants in a trademark infringement action. This Court's decisions in Velten v. Lippert, 985 F.2d 1515, 1522 (11th Cir. 1993) and Church of Scientology Flag Serv. v. City of Clearwater, 2 F.3d 1514, 1551 (11th Cir. 1993) do not help Plaintiff either. Those

Here, the District Court correctly set forth the summary judgment standard, correctly concluded that Delta met its burden through affirmative and other evidence of showing that there was no genuine issue of material fact in the case, and correctly concluded that Stevenson had not proffered adequate evidence to permit a jury finding of any unlawful discrimination.  There is no basis to reverse the District Court decision based on the summary judgment standard it used.

2.    **The District Court Correctly Concluded That Stevenson Did Not Demonstrate A *Prima Facie* Case Or Other Evidence Of Discrimination.**

Stevenson next argues that the District Court erred by finding that she had not demonstrated a *prima facie* case or other evidence of discrimination.  She barely develops this argument in her Appellant Brief, however, and certainly does not demonstrate that the District Court erred.

Stevenson's primary argument to this Court (as it was to the District Court) is that she has "cited extensively to the record" to establish that that there are comparable employees who Delta treated better -- *i.e.*, individuals outside of her protected class that engaged in substantially similar misconduct, but were not

---

cases set forth the well-established summary judgment burdens, but then reverse -- in part or in whole -- a summary judgment grant after reviewing the evidence and finding that the non-moving party had come forward with evidence showing a genuine issue of material fact.

terminated by Delta. (Appellant Brief, pp. 21-22) However, Stevenson does not remotely address the Magistrate Judge and District Court's findings as to why these alleged "comparables" do not support her claim.

As the District Court correctly noted, to show a prima *facie case* of discrimination based on alleged "comparable" evidence generally requires a plaintiff to show that the alleged comparator, who is outside of her protected class, was "similarly situated in all material respects." That is, they: (1) "engaged in the same basic conduct (or misconduct) as the plaintiff;" (2) were "subject to the same employment policy, guideline, or rule as the plaintiff;" (3) were "under the jurisdiction of the same supervisor as the plaintiff;" and (4) "share[d] the plaintiff's employment or disciplinary history." (Doc. 102, p. 27, citing Lewis v. City of Union City, Georgia, 918 F.3d 1213, 1227-28 (11th Cir 2019)).

As set forth above, the Magistrate Judge carefully reviewed each of Stevenson's alleged "comparables" under this standard, and recognized that these individuals did not support her claim because, first, they were not outside of her protected class,[18] and second that Stevenson did not show that they were "similarly

---

[18] For instance, Stevenson pointed to African American employees (such as Sidarious Johnson) and female employees (such as Debra Mercer, Angel Mooring, Heather Cross, and Sabrina Simmons) who she alleges were treated better than she was. (Doc. 98, pp. 10-11, 17)

Independently, as the Magistrate Judge also noted, when Stevenson chose her alleged "comparables," she cherry-picked individuals and ignored: (a) scores of

situated in all material respects." (Doc. 102, pp. 26-37))[19] Stevenson does not

remotely explain in her appeal how this finding by the lower court was in error.

Both the Magistrate Judge and the District Court also properly considered

the fact that there were ways -- other than through comparable evidence -- to

establish a *prima facie* case of discrimination, including through a "convincing

mosaic" analysis. Both correctly recognized, however, that Stevenson did not

"argue or produce any evidence that she can prove discriminatory animus in any

other way." (Doc. 102, p. 37; Doc. 106, p. 3, n.2) Stevenson identifies no other

evidence in her brief to this Court. As set forth below, while she (incorrectly)

---

other employees in exactly the same protected classes as her receiving "favorable
treatment" that Plaintiff contends she was denied; and (b) large numbers of
individuals outside her protected class who, like Stevenson, were terminated.
(Doc. 102, p. 27, n. 15) Stevenson ignores this fact in her Appellant Brief because
she knows that evidence which shows a pattern in which protected employees
sometimes do better, and sometimes do worse that "is not evidence of...
discrimination." See Calhoun v. EPS Corp., 36 F. Supp. 3d 1344, 1353 (N.D. Ga.
2014). See also Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 642
(3d Cir. 1998).

[19] More specifically, in a lengthy, person-by-person analysis of the evidence
regarding the conduct of the alleged "comparables," the Magistrate Judge correctly
found that: (a) five of the alleged comparables were *cleared of any misconduct
whatsoever* by Delta; (b) five were found to have engaged in *conduct that was
materially different* from Stevenson; and (c) four *were (unlike Stevenson) truthful*
when they were interviewed about their actions. (Doc. 102, pp. 26-37)

argues that she has shown pretext -- she is wrong and such evidence would still be insufficient to create an issue of fact in this case.

### 3. The District Court Correctly Concluded That Stevenson Did Not Proffer Evidence That Would Establish Pretext.

The Magistrate Judge and then the District Court Judge also both held that Stevenson had failed to offer evidence that would establish any pretext in Delta's reason for terminating Stevenson.  (Doc. 102, pp. 37-45; Doc. 106, p. 3)[20] Stevenson argues that this holding was in error, and that she established "pretext" in Delta's explanation for her termination.  Her argument is both irrelevant and wrong.

First, as the lower court correctly recognized, simply showing "pretext" -- without showing a *prima facie* case or other evidence of discrimination -- does not permit a plaintiff to survive summary judgment.  (Doc. 102, p. 37) This because, to show pretext, a plaintiff must show "*both* that the [employer's] reason was false, and that discrimination was the real reason."  Lee v. Safe-Dry Carpet & Upholstery, 2021 U.S. App. LEXIS 25957, at *9 (11th Cir. Aug. 27, 2021)

---

[20] The Magistrate Judge conducted 8-pages of detailed analysis of Stevenson's claims of pretext. (Doc. 102, pp. 37-45)  The District Court Judge then conducted a *de novo* review of the record and independently agreed with the R&R's that Stevenson had not  "rebutted" the legitimate nondiscriminatory reasons provided by Delta for either the broad investigation of employees' travel benefits or for Plaintiff's termination."  (Doc. 106, p. 3)

(emphasis in original and quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993)).

Second, Stevenson's arguments that she has shown pretext are not properly raised or briefed by her to this Court.  Her arguments consist of nothing more than conclusory statements that she "directly refuted" Delta's undisputed facts about the relevant policies in this case, Delta's investigation of her, and the reasons Delta terminated her -- generally with no citation to the record at all or just a citation to "Doc. 98" (her Summary Judgment Response Brief).  (Appellant Brief, pp. 25-26)  <u>See</u> <u>Sapuppo</u>, 739 F.3d at 681 (holding that claims raised in a "perfunctory manner" are abandoned).

Third, any review of Stevenson's pretext arguments establishes their lack of merit -- and demonstrate both the Magistrate Judge and the District Court Judge were correct when they found that Stevenson had not demonstrated pretext in Delta's explanation for her termination.

For instance, Stevenson alleges that she demonstrated pretext by "directly refut[ing] Delta's undisputed facts nos. 7, 9, 11, 15, and 17 regarding the alleged work rule that was filed. (sic.)"  (Appellant Brief, p. 25)  The undisputed facts proffered by Delta established both the existence of the "work rule" at issue (Delta's policies prohibiting the use of travel passes for business), as well as the fact that Stevenson was well aware of these policies.   (Doc. 88-1, ¶¶ 7, 9, 11, 15

41

and 17)  Far from "directly refuting" anything, Stevenson admitted on deposition that she was well aware of Delta's "strict rule" prohibiting the use of Travel Passes for business travel.  (Doc. 88-4, Exh. 8 and p. 101)

Stevenson also baldly alleges that she demonstrated pretext by rebutting Delta's Statement of Undisputed Facts No. 20-24, 25-31, 32-47, 27, 38 and 44 -- relating to Delta's investigation and termination of her -- "with conflicting facts in the record."  (Appellant Brief,  p. 25)  But again, she offers no explanation at all as to how she "directly refuted" these facts and points to no "conflicting facts" in her brief.  (Id.)  A review of Stevenson's briefing in the District shows that she simply disputed Delta's facts with statements like "Plaintiff denies the allegations in paragraph 24 to the extent they contradict the record, which speaks for itself." (Doc. 98, p. 21, ¶ 24)  This, of course, does not rebut anything.[21]

As the District Court correctly recognized, Stevenson's allegations of "pretext" boil down to an argument that (despite the evidence to the contrary) --

_____

[21] Stevenson's other arguments that she created an issue of fact on pretext are similarly meritless.  For instance, she argues that she created a dispute as to whether her travel companion (Dais) owned a music production company and worked with a client (Boyett).  (Appellant Brief, pp. 17-20)  But she then quotes her own deposition testimony *establishing that these two individuals "work together" in Dais' business*.  She similarly takes issue with Delta's statement that Dais and Boyett traveled to shows together -- by pointing to her own testimony that "They go to shows. They go to concerts."  (Appellant Brief, pp. 18-19)

she did not violate Delta's travel pass policy; her travel companion (Dais) was not using his passes for his business travel; and that Delta should have simply believed her when she said Dais was using Delta's passes for "pleasure." (Doc. 88-4, pp. 188-91) But Stevenson's purported opinion or disagreement with Delta's conclusions is ***not*** the relevant question in this (or any) discrimination lawsuit. Instead, the issue in this discrimination lawsuit is whether Delta concluded in good faith that Dais was using his passes for business travel connected with his music business, that Stevenson had lost control of her travel passes, and that she had lied to Delta about it. The evidence is undisputed that Delta reached precisely this conclusion. See <u>Elrod</u>, 939 F.2d at 470 ("federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. . . . Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.") (citations omitted).

## D.    <u>The District Court Did Not Refuse To Rule On Stevenson's Motion To Compel Or Abuse Its Discretion In Its Ruling.</u>

Stevenson's final claim on this appeal is that the District Court decision should be reversed because: (i) it refused to consider her request for nationwide discovery after the deposition of Lisa Blackmon; and (ii) if it had done so, it would have ordered such discovery because "Blackmon is the ultimate decision maker" making nationwide discovery relevant.

Both of these arguments are demonstrably wrong.  First, the District Court did not "refuse to consider" Stevenson's Motion to Compel after Blackmon's deposition.  The Magistrate Judge expressly denied the Motion (Doc. Entry Dated Oct. 10, 2019, consisting of ORDER denying Motion to Compel).  Stevenson then successfully appealed the Magistrate Judge's Order to the District Court who granted her some of the discovery she sought.  (Doc. 67)

Second, the argument that she was entitled to more because Blackmon was the "ultimate decision-maker" in her termination is simply a misrepresentation of the record.  The undisputed evidence is that Blackmon was only minimally involved in terminations generally, and was *not involved in her termination in any way whatsoever.*  <u>See</u> Sec. B.7 above.  As noted above, Stevenson was granted discovery regarding her work unit,[22] and the District Court did not abuse its discretion in its discovery ruling.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the District Court's Order granting Delta's Motion for Summary Judgment (Doc. 106) should be affirmed.

---

[22] The Eleventh Circuit is clear that discovery about comparables is generally limited to the local employing unit.  <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1085 (11th Cir. 1990). This is because, "in the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination—the employing unit or work unit."  <u>Id</u>. (quoting <u>Marshall v. Westinghouse Elec. Corp.</u>, 576 F.2d 588, 592 (5th Cir. 1978)).

44

Respectfully submitted,

s/ Benjamin A. Stone
Benjamin A. Stone
Georgia Bar No. 683850

MUNGER & STONE LLP
999 Peachtree Street, NE
Suite 2850
Atlanta, GA 30309
Tel:  (404) 815-1884
Fax:  (404) 815-4687
ben.stone@mungerandstone.com

Attorneys for Defendant/Appellee
Delta Air Lines, Inc.

45

## **CERTIFICATION CONCERNING LINES AND WORD COUNT**

This brief complies with the limitations set forth in Rule 32(a)(7)(B) of the

Federal Rules of Appellate Procedure.  This brief contains 11,988 words.


s/Benjamin A. Stone
Georgia Bar No. 683850


MUNGER & STONE, LLP
Suite 2850
999 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone (404) 815-0933
Facsimile (404) 815-4687

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the "**BRIEF OF**

**APPELLEE**" upon the following counsel of record by CM/ECF:

> Charlena L. Thorpe, Esq.
> 6340 Sugarloaf Parkway
> Suite 200
> Duluth, GA 30097

This 18th day of April, 2022

<u>s/Benjamin A. Stone</u>
Georgia Bar No. 683850

MUNGER & STONE, LLP
999 Peachtree Street, NE
Suite 2850
Atlanta, Georgia 30309
Telephone (404) 815-1884
Facsimile (404) 815-4687

x